IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 1:11cr512 (LMB) |
| | ) | 1:13cv159 (LMB) |
| AMANDA DEANNE COLES, | ) | |
| | ) | |
| Movant. | ) | |

MEMORANDUM OPINION

Before the Court is a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion") filed by pro se movant Amanda Deanne Coles ("Coles"), in which she argues that she received constitutionally ineffective assistance of counsel from her court-appointed attorney. On April 5, 2013, the government filed an Answer to Petitioner's Motion Pursuant to 28 U.S.C. § 2255 ("Answer"), accompanied by a five-page affidavit submitted by defense counsel. As of May 8, 2013, Coles has not filed any reply. For the reasons discussed below, her § 2255 Motion will be dismissed in all respects.

I. BACKGROUND

On October 25, 2011, Coles was indicted for making a false material statement during the purchase of a firearm in violation of 18 U.S.C. § 922(a)(6) (Count 2) and providing a firearm to a convicted felon in violation of 18 U.S.C. § 922(d)(1) (Count 3). The person to whom Coles was accused of providing the gun was

co-defendant Kelvin Dwain Vanhook, Jr. ("Vanhook"), who was charged in the same indictment with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count 1), and was convicted of that charge. Coles was represented at all times by defense attorney Chong C. Park ("Park").

The evidence at trial showed that on September 26, 2011, Coles conducted a "straw purchase" of a SIG Sauer .40 caliber pistol for Vanhook, a convicted felon and the father of her infant. Trial Tr. at 87-95, 211, 215. Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") agents observed Coles exiting the gun store with the firearm and drive to the parking lot of a nearby 7-Eleven, where Vanhook approached her car and received the firearm. Id. at 205-10. Coles was arrested and interviewed in the parking lot, where she admitted to Agent Jeffrey Grabman that she had just purchased the gun that Vanhook took from her car, that she knew Vanhook was a convicted felon, and that she knew it was illegal for convicted felons to possess firearms. Id. at 212-13. At trial, however, Coles asserted her innocence and testified that Agent Grabman was lying about her confession to him. See id. at 262-85.

On December 13, 2011, Coles was convicted by a jury of both charges. On March 8, 2012, she was sentenced at the low end of the advisory guideline range to 21 months incarceration on Counts 2 and 3, to run concurrently and to be followed by three

years of supervised release. At the sentencing hearing, the Court orally advised Coles of her right to appeal. See Dkt. No. 92, at 1. Coles did not appeal either her convictions or her sentence and has timely filed her pro se § 2255 Motion.

II. DISCUSSION

In her § 2255 Motion, Coles alleges constitutionally ineffective assistance of counsel based on Park's failure to file a notice of appeal, to interview a government agent, and to interview government witnesses. See § 2255 Mot. at 14.

A. Standard of Review

A motion under 28 U.S.C. § 2255 provides for a collateral attack on a conviction or sentence that was imposed in violation of the United States Constitution or laws, where the court lacked jurisdiction to impose the sentence, where the sentence was in excess of the maximum authorized, or where the sentence or conviction is otherwise subject to collateral attack. To prevail, a movant bears the burden of proving her grounds for collateral relief by a preponderance of the evidence. Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967). Relief under § 2255 is designed to correct for fundamental constitutional, jurisdictional, or other errors, and is therefore reserved for situations in which failing to grant relief would otherwise "inherently result[] in a complete miscarriage of justice."

United States v. Addonizio, 442 U.S. 178, 185 (1979) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).

Moreover, a motion pursuant to § 2255 "may not do service for an appeal," and claims that were not appealed are deemed waived and, therefore, procedurally defaulted unless the movant can show cause and actual prejudice. United States v. Frady, 456 U.S. 152, 165-67 (1982). An exception applies, however, when a defendant brings a claim of constitutionally ineffective assistance of counsel, which can be raised in a collateral challenge. See United States v. Martinez, 136 F.3d 972, 979 (4th Cir. 1998).

B. Ineffective Assistance of Counsel

To sustain her § 2255 Motion based on ineffective assistance of counsel, Coles must satisfy the two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984), which requires a showing of both deficient performance by counsel and prejudice to the movant. Deficient performance occurs when "counsel's representation fell below an objective standard of reasonableness." Id. at 688. Such a determination "must be highly deferential" with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

Even if counsel's performance were deficient, to prevail, a movant must also "show that there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A showing that "the errors had some conceivable effect on the outcome of the proceeding" is not enough; a reasonable probability requires that the errors are "sufficient to undermine confidence in the outcome." Id. at 693-94. Essentially, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. Coles bears the burden of proving both deficient performance and sufficient prejudice in each of her ineffective assistance claims. Fields v. Att'y Gen. of State of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1992).

1. Failure to File a Notice of Appeal

Movant first alleges that Park was constitutionally ineffective because he did not file a notice of appeal after she directed him to do so on March 12, 2012. § 2255 Mot. at 14. Specifically, she claims that Park visited her in the Alexandria Detention Center ("ADC") where they "discussed appellate options," he advised her that "he wasn't sure if there were grounds for an appeal," and she instructed him to appeal her conviction and her sentence. Id. Under Fourth Circuit precedent, an attorney who disregards a defendant's unequivocal instruction to file a timely notice of appeal is per se ineffective. See United States v. Poindexter, 492 F.3d 263, 269-73 (4th Cir. 2007). Poindexter further counseled that "when

5

a defendant brings a § 2255 claim based on his attorney's failure to file a requested notice of appeal, the district court should hold a hearing if it is unclear in the record whether the attorney was so instructed." Id. at 272.

Coles offers no evidence, other than her allegation, to support her claim that she unequivocally instructed Park to file an appeal, and she has not filed any rebuttal to either the government's Answer or Park's affidavit. On the other hand, Park has submitted a very detailed affidavit contradicting Coles's account of events after her sentencing hearing. See Gov't Answer, Aff. of Chong C. Park ("Park Aff."), at 1-3. Specifically, Park explains that four days after the March 8, 2012 sentencing, he visited Coles in jail "to advise her of her right to appeal, discuss the merits, if any, of an appeal if she so chose to appeal, and to give her a copy of the Judgment Order." Park Aff. at 1-2. According to Park, Coles "appeared upset and expressed her resentment towards the Court and law enforcement," stated only "that she would not be treated fairly even if she did appeal," and questioned Park as to "special programs or confinement accommodation . . . during her pregnancy" while reiterating that Park should "not provide any information, especially about her children or her FCI location, to her mother." Id. at 2. Park further averred that "Coles did not expressly, or by any implication that I perceived,

6

communicate to me that she wanted to appeal her conviction or sentence," and that "[t]here was no discussion about filing a notice of appeal then later withdrawing it if after 'looking into it,' there were no grounds for the appeal." Id. Over two weeks later, Park received a call from a friend of Coles who stated that she had spoken with Coles and requested that he send Coles a copy of her trial transcripts, although she was unable to explain why Coles wanted them. Id. at 3. Park surmised that Coles intended to file a § 2255 motion, and he obtained and forwarded the transcripts to Coles as she requested. Id.

The credibility of Park's affidavit is corroborated by the attached Out-of-Court Hourly Worksheet, which he submitted on June 18, 2012 as part of his Criminal Justice Act ("CJA") payment voucher for legal services to Coles. That documentation reflects that Park spent one hour during a jail visit with Coles on March 12, 2012, four days after she was sentenced, and an additional 0.4 hours of work with respect to a telephone call with one of Coles's friends concerning the "custody of client's child" on March 14, 2012. See Attached CJA Worksheet, at 4. These entries are consistent with Park's account of his post-sentencing meeting with Coles and her focus on issues involving her children. In addition to finding that Park's affidavit is inherently credible, the Court's observation of Coles's trial testimony and the jury's rejection of her exculpatory testimony

7

support the conclusion, without the need for an evidentiary hearing, that Coles's allegations about directing Park to file a notice of appeal are not credible and that she has therefore not sustained her burden of proof on that claim. Therefore, this claim of ineffective assistance of counsel will be dismissed without an evidentiary hearing.

2. Failure to Interview a Government Agent

Coles also alleges that Park was ineffective because he ignored her "repeated[]" requests to interview ATF Agent Tim Lee, who she claims was "the only person who physically stood by me through the duration of the 'interrogation'" on September 26, 2011, and "would [have] know[n] if I confessed as another agent, Jeff Grabman, was claiming." § 2255 Mot. at 14.

This allegation is baseless in light of defense counsel's representations and the testimony at trial. In his sworn affidavit, Park states that Coles "never mentioned Agent Tim Lee prior to or during trial," and "[t]o the contrary, she informed me that [Officer] Matthew Cisler . . . was the one agent who was standing by her and Agent Grabman when she was being interrogated." Park Aff. at 4. This representation fully comports with both law enforcement officers' trial testimony that they were standing together during the interview. See Trial Tr. at 221, 259. The only testimony regarding Agent Lee indicated that he arrived "at the tail end of the vehicle stop"

8

and was not part of the group of ATF agents who responded to the incident and interviewed Coles. Id. at 194, 259.

Moreover, defense counsel's strategic decision about whether to call an individual as a defense witness is entitled to "enormous deference." See United States v. Terry, 366 F.3d 312, 317 (4th Cir. 2004) (citations and internal quotation marks omitted). Coles' speculation that Agent Lee "was a key witness" for her defense cannot overcome this presumption of reasonableness. § 2255 Mot. at 14. Accordingly, movant's claim that counsel was ineffective for failing to call Agent Lee as a defense witness fails.

### 3. Failure to Interview Government Witnesses

Coles's final argument is that Park was ineffective because he "never interviewed any of the prosecution's witnesses" and was therefore unprepared to cross-examine them. Id.

Coles fails to specify what information would have been obtained from interviews of government witnesses, and therefore does not establish how those interviews would have produced a different result at trial. Indeed, the defense theory of the case - that Coles purchased the firearm for her own protection and that Vanhook mistakenly took the bag containing the firearm instead of an identical bag he had left in Coles's car - did not depend on disputing most of the events to which the government's witnesses testified. Cf. Trial Tr. at 73-77; 347-56. The

record does reflect that Park attempted to impeach Agent Grabman's credibility with respect to Coles's confession by cross-examining him as to the lack of video or audio footage of her statements, see id. at 219-20, and he elicited from Officer Cisler an admission that although he was standing near Agent Grabman during the interview with Coles, he did not hear Coles make the incriminating statements to which Agent Grabman testified, see id. at 259-60. Moreover, Park's affidavit establishes that he did speak with government witnesses, including Bernis Conatser, the owner of the firearms store, and "the investigating agents," with whom he discussed the government's evidence. Park Aff. at 4. These averments in Park's affidavit are also supported by entries in the CJA Worksheet, which show multiple meetings at the United States Attorney's Office to review discovery as well as a trip to the firearms store where he spent 0.8 hours on December 2, 2011. See Attached CJA Worksheet at 1-3.

Movant has not produced any evidence to overcome the "strong presumption" that counsel's performance was reasonable or to suggest that any deficient performance prejudiced her at trial. Strickland, 466 U.S. at 689. Moreover, Park credibly states that he met with the prosecution team, discussed the government's evidence, observed and reviewed the physical evidence in the case, and attempted to speak with at least one

government witness who refused to talk to defense counsel. Park Aff. at 4. Thus, this ineffective assistance claim must also fail.

### III. CONCLUSION

For the reasons stated above, Coles's § 2255 Motion will be dismissed by an Order to be issued with this Memorandum Opinion.

Entered this 9th day of May, 2013.

Alexandria, Virginia

/s/ 
Leonie M. Brinkema
United States District Judge

11